1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   JOSEPH P.,[1]                              Case No. 5:21-cv-1075-GJS

12                    Plaintiff

13         v.                                   **MEMORANDUM OPINION AND
                                                ORDER**
14   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,
15
                     Defendant.
16

17                    **I.    PROCEDURAL HISTORY**

18         Plaintiff Joseph P. ("Plaintiff") filed a complaint seeking review of the

19   decision of the Commissioner of Social Security terminating his previously granted

20   Disability Insurance Benefits ("DIB") awarded under Title II of the Social Security

21   Act. [Dkt. 1.]  The parties filed consents to proceed before the undersigned United

22   States Magistrate Judge [Dkts. 11 and 12] and briefs addressing disputed issues in

23   the case [Dkt. 20 ("Pltf. Br.") and Dkt. 24 ("Def. Br.")].  The Court has taken the

24   parties' briefing under submission without oral argument.  For the reasons discussed

25   below, the Court finds that this matter should be affirmed.

26

27   [1]      In the interest of privacy, this Order uses only the first name and the initial of
     the last name of the non-governmental party.

28

## II.   ADMINISTRATIVE DECISION UNDER REVIEW

Following a decision dated May 10, 2013, which is the comparison point decision ("CPD"), Plaintiff began receiving disability benefits due to impairments caused by a mood disorder.  [AR 133.]  Upon subsequent review, the Commissioner found that Plaintiff's impairments had medically improved such that he was able to return to work and no longer disabled as of April 1, 2017.  [AR 116, 142.]  Plaintiff requested reconsideration before a Disability Hearing Officer ("DHO").  [AR 123.] On October 18, 2017, the DHO held a hearing and issued a decision upholding the determination of Plaintiff's medical improvement relating to his ability to work and finding him "not disabled."  [AR 124-141.]  Plaintiff appealed the DHO's decision and requested a hearing before an ALJ.  [AR 145.]

On December 5, 2019, Plaintiff appeared via video and testified in a hearing held before Administrative Law Judge Josephine Arno.  [AR 11, 32 -62.]  The ALJ advised him of his right to representation at the outset and, after being so advised, Plaintiff confirmed that he signed a waiver form indicating his desire to proceed unrepresented.  [AR 34.]  Testimony was heard from Plaintiff, his mother, and a vocational expert ("VE"). [AR 11, 33-34.]

In a decision dated September 25, 2020, the ALJ found Plaintiff's impairments had medically improved after the CPD such that he was no longer disabled as of April 1, 2017.  [AR 15.]  After considering Plaintiff's stated reasons for disagreeing with the ALJ's decision, the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner.  [AR 1-10.]  This action followed.

## III.  GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if:  (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*,

1   499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant

2   evidence as a reasonable mind might accept as adequate to support a conclusion."

3   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations

4   omitted); *see also Hoopai*, 499 F.3d at 1074.

5                                    **IV.  DISCUSSION**

6          Plaintiff argues the ALJ erred by: (1) failing to adequately advise him of his

7   right to representation; and (2) failing to develop the record.  The Court addresses

8   Plaintiff's contentions below and finds that reversal is not warranted.

9          **1.        Plaintiff's Right to Representation**

10         First, Plaintiff argues that he did not knowingly waive his right to

11  representation at the hearing before the ALJ.  Specifically, Plaintiff contends that

12  although the ALJ verbally informed him that he had a right to be represented by

13  counsel, the ALJ never explained that he could obtain an attorney for little or no cost

14  even after Plaintiff repeatedly expressed that he did not obtain counsel because he

15  did not have the financial means to do so.  (Pltf.'s Br. at 8-12.)  According to

16  Plaintiff, the ALJ's failure to "explain the availability of both free legal services and

17  contingency representation" at the administrative hearing failed to comply with the

18  waiver procedures established in the Commissioner's Hearings, Appeals and

19  Litigation Manual ("HALLEX").  (Pltf.'s Br. at 9.)  Defendant responds that

20  Plaintiff waived his right of representation on the record.  Moreover, even if there

21  was no waiver, Plaintiff is not entitled to relief because HALLEX does not carry the

22  force of law and therefore it is not binding on the ALJ nor legally enforceable by the

23  Court.

24         **A. Legal Standard**

25         The Social Security Commissioner is required to notify claimants in writing

26  of their "options for obtaining attorneys [and] of the availability to qualifying

27  claimants of legal services organizations which provide legal services free of

28  charge."  42 U.S.C. § 406(c).  The Ninth Circuit requires the Commissioner to make

1    an extra effort to ensure a claimant fully understands contingency arrangements in

2    cases of financial hardship.  *Roberts v. Comm'r of the SSA*, 644 F.3d 931, 934 (9th

3    Cir. 2011).  However, a claimant may waive his right to counsel if he received

4    information enabling him to make an informed decision.  *Vasquez v. Astrue*, Case

5    No. EDCV 11-883-OP, 2012 U.S. Dist. LEXIS 21596, 2012 WL 590019, at *2

6    (C.D. Cal. Feb. 21, 2012) (finding claimant knowingly waived right to counsel).

7          In *Roberts v. Comm'r of the Soc. Sec. Admin.*, the Ninth Circuit Court of

8    Appeals held that an ALJ is not required to provide any disclosures beyond those

9    contained in 42 U.S.C. § 406(c) before obtaining a valid, informed waiver by a

10    claimant of his or her right to representation.  644 F.3d 931, 934 (9th Cir. 2011).

11    Section 406(c) requires the Commissioner to notify each claimant in writing "of the

12    options for obtaining attorneys to represent individuals in presenting their cases

13    before the Commissioner of Social Security" and to "advise the claimant of the

14    availability to qualifying claimants of legal services organizations which provide

15    legal services free of charge."  In reaching its holding that these were the only

16    required disclosures, the Ninth Circuit rejected the argument that an ALJ is required

17    to give claimants additional information and make additional assurances before

18    obtaining a waiver based on the Commissioner's Hearings, Appeals and Litigation

19    Law Manual ("HALLEX") I-2-6-52, "which states that the ALJ 'should ensure on

20    the record' that an unrepresented claimant 'has been properly advised of the right to

21    representation and . . . is capable of making an informed choice about

22    representation.'"  *Roberts*, 644 F.3d at 934 (quoting HALLEX I-2-6-52).  The Court

23    rejected this argument because "HALLEX . . . does not 'carry the force of law and

24    [is] not binding upon the agency.'"  *Id*. (*quoting Parra v. Astrue*, 481 F.3d 742, 749

25    (9th Cir. 2007)).

26    **B.  Hearing**

27          The ALJ began the hearing by noting Plaintiff was not represented.  [AR 33.]

28    This exchange between the ALJ and Plaintiff followed:

1        ALJ:  So, you do – I want to explain to you that you have the right to have a

2  representative assist you with this hearing.  You have the right to have somebody

3  who's an attorney or not an attorney, but familiar with Social Security rules, all

4  right.  Representatives are good in the sense that they can make sure that we have all

5  of your medical records, although if you tell me where you've been to the doctor,

6  we'll work on getting those records now while we wait.  Representatives are good

7  because they explain the rules, the process, about how this hearing all works, they

8  make legal arguments on your behalf, I mean, those are all good things about

9  representatives.  If you're interested in having a representative assist you with this

10  hearing, it's your responsibility to find a representative.  What my office can give

11  you is a one-page sheet that has the names and phone numbers of some

12  organizations, it's–think of it as like a starting point like if you're not sure how to

13  start going about finding a representative.  It's a–the sheet that you're going to get is

14  a good starting point that you know you have some phone numbers, and you can

15  start making some calls.  But ultimately, it is your responsibility to find a

16  representative if you want one.  And it can be anybody that you choose.  This

17  hearing will not be postponed again for that reason.  So, when the case is

18  rescheduled, you come to the hearing and you still don't have a representative, it

19  will not be rescheduled a second time for that reason.  Okay.  Do you understand

20  your right to representation?

21        CLMT: Yes. Yes, I actually can't afford representation, so I already said I can

22  waive that, I can waive…

23  [AR 34.]

24        A similar exchange took place near the end of the hearing.

25        ALJ: So, this is what will happen.  We'll, you know, we'll send a request for

26  medical records to the Eisenhower Medical Center, turn in the records that you have

27  here today so they can be added to your file and then turn in the form filled out

28  where you waive your right to representation.  You will receive a brand-new hearing

5

1   notice in the mail with the new date and time for an in-person hearing, okay?

2   CLMT: Yes. I guess I've had some anxiety because of this hearing, is it

3   possible we just do it now because I don't – I can't afford the representation and I

4   don't feel like it's going to be more – more stressful for me to go through this

5   process again.

6   ALJ: We can, yeah, we can do the hearing now.  That's not a problem, it's

7   just, by doing that, though, you're giving up your right to an in-person hearing, is

8   that what you want?

9   …

10   Clmt: Well, yeah, I just—like I say, I'm—it's—I've been so stressed out

11   about this whole process that I just, I almost feel like I just want to get it over with

12   just to get it done.  And I mean, I brought all the medical information from all the

13   records from all the treatments I've had over the past year.

14   [AR 38-39.]

15   **C. Discussion**

16   Here, the Commissioner provided Plaintiff written notice of the right to

17   representation twice, initially on November 16, 2017, and again on September 10,

18   2019.  [AR 149, 152-157, 164-171.]  The November notice included a list of legal

19   services organizations he could contact for attorney referral services and/or free

20   legal help.  [AR 152-157.]  Indeed, Plaintiff concedes that the Commissioner

21   included an "SSA Publication [titled] Your Right to Representation" with his Notice

22   of Hearing."  (Pltf.'s Br. at 11.)  Nevertheless, Plaintiff argues that "simply

23   including this pamphlet with the Notice of Hearing does not meet the standard set

24   forth in HALLEX."  (Pltf.'s Br. at 12.)  According to Plaintiff, the ALJ was required

25   to inquire further because of his history of mental illness and his mistaken belief, as

26   demonstrated on the record, that legal representation required significant financial

27   resources.  However, Plaintiff's argument is unpersuasive.

28   As seen above, the binding case law in the Ninth Circuit states that no

1   disclosure is required regarding a claimant's right to representation "other than the

2   disclosure required by § 406(c)" and allegations of non-compliance with HALLEX

3   do not affect the analysis. *Roberts*, 644 F.3d at 933-934.  Here, Plaintiff received a

4   pre-hearing written notice advising him, among other things, of his right to

5   representation.  During the hearing, the ALJ again informed Plaintiff of his right of

6   representation, and he waived his right to representation.  [See AR 31-32, 170-171.]

7   Thus, the ALJ provided all statutorily required disclosures before the hearing and

8   before Plaintiff signed the waiver form, thus effectuating a sufficient waiver of

9   representation pursuant to the Ninth Circuit Court of Appeals' holding in *Roberts*.

10  Even when considering Plaintiff's stated belief that his inability to pay would

11  prevent him from getting an attorney, the Court is satisfied there was nothing

12  improper about Plaintiff's waiver of representation at the hearing as the written

13  notices together with the ALJ's verbal notice, adequately informed Plaintiff that he

14  had the right to have a representative at the hearing and the right to postpone the

15  hearing to obtain representation.

16          With respect to Plaintiff's mental impairments, nothing in the hearing

17  transcript or the record as a whole suggests that Plaintiff did not understand his right

18  to have a representative.  Plaintiff has a high school education and he completed

19  "some junior college."  [AR 22, 42.]  Plaintiff does not allege he could not read or

20  understand the written notices he received; indeed prior to the hearing, Plaintiff

21  prepared a detailed and well written letter that he read into the record explaining his

22  extensive work history as a Court Security Officer and how his various physical and

23  mental impairments impact his earnest desire to work as a police officer. [AR 45-49,

24  299-300.]  Thus, Plaintiff's arguments that the ALJ should have done more to

25  explain his right to representation is without merit.  Plaintiff unequivocally waived

26  his right to representation and the Court concludes he did so knowingly and

27  intelligently.

28

1      **2.**       **The ALJ's Duty to Develop the Record**

2           Plaintiff, in the alternative, argues the ALJ failed to develop the record.

3  Plaintiff contends that although he testified about attending "talk therapy," the ALJ

4  never requested Plaintiff's group therapy records.  (Pltf.'s Br. at 18.)   Plaintiff

5  asserts, given the lack of overall mental impairment evidence, the ALJ could have

6  cured this omission by ordering a more recent consultative examination instead of

7  relying on the consultative examination conducted in 2017—three years prior to the

8  ALJ's unfavorable decision.  (Pltf.'s Br. at 18.)  The Commissioner responds that

9  Plaintiff has failed to show that any additional medical records exist, nor why

10  obtaining additional medical records was necessary as there is no ambiguity in the

11  record.  The Court does not find that the ALJ's duty to further develop the record

12  was triggered here.

13       **A.**      **Relevant Proceedings Related to Plaintiff's Mental Impairments**

14           On March 3, 2017, Clifford Taylor, Ph.D., Board certified in Psychology,

15  conducted a complete consultative psychological evaluation of Plaintiff.  [AR 398-

16  405.]  Upon examination, Plaintiff's chief complaints were depression, anxiety, and

17  panic attacks.  [AR 398.]  During questioning by Dr. Taylor, Plaintiff denied

18  receiving treatment for his mental health symptoms or the use of psychotropic

19  medications.  [AR 399.]  He reported living alone in a house and spending his days

20  being largely isolated, staying home, listening to music, browsing the internet, and

21  watching television.  He reported marked difficulties with sleeping.  [AR 400.]  He

22  reported spending time with his family and reported his mother did his laundry.  He

23  reported no difficulties preparing his own meals, caring for his own personal

24  hygiene, cleaning, driving when necessary, managing his own funds, and grocery

25  shopping.  [AR 400.]

26           Findings from the mental status examinations demonstrated Plaintiff was

27  mildly depressed and anxious.  He was a thorough historian, with appropriate eye

28  contact.  [AR 401.]  Upon clinical testing, Plaintiff's Working Memory Index test

1   showed a score of 83, indicating low average memory; and findings from the WAIS-

2   4 test showed a Full Scale IQ score of 84, indicating he was functioning in the low

3   average range of intelligence.  [AR 403.]  Based on all testing, Dr. Taylor

4   determined Plaintiff's overall cognitive functioning was assessed to be in the low

5   average range with mild deficits in visual motor processing, but with strength in

6   verbal comprehension and perceptual reasoning.  [AR 403.]  Plaintiff was also noted

7   to have significant deficits in immediate and delayed auditory memory, according to

8   the testing.  Based on the examination, Dr. Taylor diagnosed Plaintiff with

9   unspecified anxiety disorder and indicated evidence of a neurocognitive disorder.

10  Dr. Taylor opined that Plaintiff would have moderate impairments: (1) in his ability

11  to maintain concentration, persistence, and pace; (2) function in a work-setting

12  because of repeated episodes of emotional deterioration; and (3) his ability to

13  respond to appropriately to family, coworkers, supervisors and the public.

14          In April 2018, at an appointment with a general practitioner for an emergency

15  room follow-up for a "large hiatal hernia and severe anemia," Plaintiff reported low

16  energy and decreased interest in activities but denied suicidal or homicidal ideation.

17  [AR 500.]  He was diagnosed with depression and prescribed 10mg of an anti-

18  depressant, Lexapro.  [AR 497, 503.]  He was also referred to a mental health

19  specialist.

20          Findings from mental status examinations conducted from July 2018 through

21  December 2018 showed Plaintiff's mood and affect were normal; his behavior was

22  normal; his judgment and thought content were normal; and his cognition and

23  memory were normal.  [AR 427, 450, 459, 478.]

24          On December 5, 2019, Plaintiff appeared without an attorney at a hearing

25  before the ALJ.  [AR 32-62.]  The ALJ inquired about whether Plaintiff was

26  receiving any mental health treatment as follows:

27          ALJ: So, where do you see – do you see a psychiatrist, psychologist or mental

28  health therapist?

1       CLMT: I go to talk therapy, but I don't go to a psychiatrist.

2       ALJ: You go where?

3       CLMT: I go to talk therapy. I just basically –

4       ALJ: Talk therapy. Okay.

5       CLMT: Yeah.

6       ALJ: Do you have those talk therapy records?

7       CLMT: I don't have those talk therapies, it's – I don't go to a licensed

8       professional.  So, it's –

9       ALJ: Okay.  So are there –

10       CLMT: It's just a – it's a group –

11       ALJ: -- any records out there that I can request or is it –

12       CLMT: Just my medical records that I brought for the prescription medication

13       that I'm taking for the depression.

14       [AR 43-44.]

15       At the conclusion of the hearing, the ALJ asked Plaintiff if "there are other

16       records that are out there that you want me to get?"  [AR 60.]  Plaintiff responded

17       that there are "records from medical—emergency room treatments" concerning his

18       "arrythmia problems."  [AR 60.]  The ALJ left the record open and offered to

19       contact Eisenhower Medical Center to obtain any additional emergency room

20       records.  [AR 61.]

21       **B.    Discussion**

22       "In Social Security cases, the ALJ has a special duty to fully and fairly

23       develop the record and to assure that the claimant's interests are considered...even

24       when the claimant is represented by counsel."  *Celaya v. Halter*, 332 F.3d 1177,

25       1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

26       However, "[w]hen a claimant is not represented by counsel, this responsibility is

27       heightened."  *Id*.  This is because "Social Security proceedings are inquisitorial

28       rather than adversarial."  *Schiaffino v. Saul*, 799 Fed. App'x 473, 476 (9th Cir. 2020)

1    (quoting *Sims v. Apfel*, 530 U.S. 103, 111-12 (2000)).  In particular, the ALJ's duty

2    to develop the record fully is heightened where the claimant may be mentally ill and

3    thus unable to protect his own interests. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150

4    (9th Cir. 2001) (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992)).

5           Nonetheless, the ALJ is not a roving investigator; his duty to "to develop the

6    record further is triggered only when there is ambiguous evidence or when the

7    record is inadequate to allow for proper evaluation of the evidence." *Mayes v.*

8    *Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *see Webb v. Barnhart*, 433 F.3d 683,

9    687 (9th Cir. 2005) (explaining that the duty to enlarge the record only arises if the

10   evidence is ambiguous, the ALJ finds that the record is inadequate, or the ALJ relies

11   on an expert's conclusion that the evidence is ambiguous).

12          Here, Plaintiff does not contend that the evidence in the record was

13   ambiguous.  Rather, Plaintiff argues the record was incomplete or inadequate based

14   on potential additional inquiries the ALJ could have made and evidence the ALJ

15   could have sought, such as ordering Plaintiff to undergo an additional consultative

16   examination and requesting "talk therapy records" that Plaintiff testified do not

17   exist.  But these arguments are premised on the contention that there are additional

18   records or evidence revealing new or worsening symptoms that was not properly

19   considered by the ALJ.  As discussed at the hearing, the ALJ left the record open so

20   that Plaintiff could obtain and submit any additional records.  [AR 11.]  Indeed,

21   Plaintiff then submitted additional records, which the ALJ admitted into evidence,

22   and considered in her decision.  [AR 11, 63n 310.]

23          Plaintiff points to no additional records that he has not already submitted.  If

24   there were any such records, Plaintiff could have submitted any additional evidence

25   he felt necessary to support his worsening condition during the pendency of this

26   case, either to the Appeals Council, or indeed to this Court.  He has not done so.[2]

27   _____

28   [2] In a letter to the Appeals Council dated November 25, 2020, Plaintiff concedes that
     he has been "reluctant to seek ongoing and regular medical treatment for [his]

1   This is especially salient because Plaintiff is now represented by counsel.

2   Moreover, there is no question as to whether Plaintiff knew he could submit any

3   further records, because he submitted additional medical records to the ALJ after the

4   hearing.  [AR 11, 63].  *See Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 107 S. Ct. 2287

5   (1987) ("It is not unreasonable to require the claimant, who is in a better position to

6   provide information about his own medical condition, to do so.").  Contrary to

7   Plaintiff's argument, the Court finds the record was adequate to enable the ALJ to

8   evaluate the evidence concerning the severity of Plaintiff's symptoms.  *See, e.g.,*

9   *Agatucci v. Berryhill*, 721 Fed. App'x 614, 617-18 (9th Cir. 2017).  Namely, the

10  record included an unambiguous consultative examination, two state reviewing

11  physicians' opinions expressly discussing Plaintiff's functional limitations and

12  mental status examinations from Plaintiff's various medical visits in 2018 and 2019.

13          Plaintiff's argument that the ALJ was required to further develop the record

14  simply because he was unrepresented and generally lacked the sophistication needed

15  to request additional evidence or raise certain challenges during the hearing (Pltf.'s

16  Br. at 18) is also unpersuasive.  Notably, "there is no constitutional right to

17  representation at a Social Security hearing."  *Miller v. Barnhart*, 33 Fed. App'x. 914

18  (9th Cir. 2002).  Rather, the right to counsel at a Social Security hearing is a

19  statutory right, which may be waived.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th

20  Cir. 1997).  Here, as seen above, Plaintiff was thoroughly informed of his right to

21  representation prior to the hearing and during the hearing, and Plaintiff—a high

22  school graduate who could understand, read, and write English—affirmatively

23  waived his right to representation and elected to proceed at the hearing without an

24  attorney.

25          Finally, contrary to Plaintiff's assertion, the fact the consultative examination

26  was three years old does not, in and of itself, render it stale.  *See David P. v. Saul*,

27

28  physical and psychological problems."  [AR 309.]

1   No. 19-cv-01506-BEN-AHG, 2020 WL 4593311, at *1 (S.D. Cal. Aug. 11, 2020)

2   (adopting report and recommendation that held a two-year-old medical opinion was

3   not stale), *vacated and remanded on other grounds sub nom.*, *Politte v. Kijakazi*,

4   No. 21-55341, 2021 WL 5860767 (9th Cir. Aug. 10, 2021).  Moreover, an updated

5   opinion is not required simply because time elapses between an examination and the

6   ALJ's decision.  *See Owen v. Saul*, 808 Fed. Appx. 421, 423 (9th Cir. 2020)

7   ("[T]here is always some time lapse between a consultant's report and the ALJ

8   hearing and decision, and the Social Security regulations impose no limit on such a

9   gap in time.")  Such an occurrence is quite common.  *See De Hoog v. Comm'r of*

10  *Soc. Sec.*, No. 2:13cv0235-KJN, 2014 U.S. Dist. LEXIS 100712, 2014 WL

11  3687499, at *7 (E.D. Cal. July 23, 2014) (explaining that "[i]n virtually every case

12  further evidence is received after the [S]tate agency physicians render their

13  assessments—sometimes additional evidence and records are even received after the

14  ALJ hearing.)

15       To render an opinion stale, "subsequent evidence must be contradictory—or

16  at least inconsistent—with the earlier opinion in some material manner."

17  *Digiacomo v. Saul*, No. 19-cv-00494-BAM, 2020 WL 6318207, at *8 (E.D. Cal.

18  Oct. 28, 2020) (finding no error when the plaintiff had not identified subsequent

19  records that were "materially inconsistent" with the opinions relied upon).  Here,

20  Plaintiff does not cite or otherwise identify any ambiguous or unclear treatment

21  notes, medical opinions, or other evidence.  The ALJ summarized the medical

22  evidence in the record, including evidence related to Plaintiff's psychiatric

23  consultative exam and subsequent prescription for depression medication and

24  determined Plaintiff's RFC with the support of that record.  [AR 20-22.]  That

25  evidence was complete, and Plaintiff has not pointed to any evidence suggesting that

26  his mental functioning worsened after the consultative examination.  Accordingly,

27  the ALJ was not obligated to further develop the record.  *See Albrecht v. Astrue*, No.

28  1:11-cv-01319 GSA, 2012 U.S. Dist. LEXIS 121517, 2012 WL 3704798, at *12

1    (E.D. Cal. Aug. 27, 2012) (Consultative examination regarding Plaintiff's

2    impairments "not necessary" where the existing evidence was sufficient to support

3    the ALJ's determination…and such an exam was not needed to resolve an

4    inconsistency).

5         Remand on this issue is unwarranted.

6                  **V.   CONCLUSION**

7         For all of the foregoing reasons, **IT IS ORDERED** that the decision of the

8    Commissioner finding Plaintiff not disabled is AFFIRMED.

9

10         **IT IS ORDERED.**

11

12      DATED:  September 08, 2022

13

14                                             _____

15                                    GAIL J. STANDISH
                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28